UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIANA INDUSTRIES,

      Plaintiff,

v.                                    Case No. 06-12568
                                    Hon. Victoria A. Roberts

EMPIRE ELECTRONICS, INC.,

      Defendant.
_____

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION**
**FOR A PRELIMINARY INJUNCTION**

**I.     INTRODUCTION**

      This matter is before the Court on Plaintiff's Motion for preliminary injunction

(Doc. #7).  A hearing was held Wednesday, July 19, 2006 at 10:00am.  For the following

reasons, the Court **GRANTS** Plaintiff's Motion.

**II.    BACKGROUND**

      This action arises out of the alleged patent infringement by Defendant of a

"potted" lamp socket patented by Plaintiff, designed to hold wedge-based bulbs in

automobiles.

      Plaintiff argues that following implementation of stricter standards for automotive

lighting, known as USCAR 15, it designed a lamp socket that was the first to meet the

USCAR 15 standards and solved the problem of taillight and headlight "flickering"

exhibited by previous sockets.  Plaintiff described the problem as having two sources: mechanical separation of the bulb from its terminals due to vibration; and, electrical separation of the wires from the terminals, due to vibration and heat.

Plaintiff says both problems are solved by its invention; Plaintiff's socket addresses how to "position a spring clip within the socket body to effectively grip the lamp base without interfering with the electrical terminals."  Plaintiff's socket is patented by the U.S. Patent Office, No. 7,052,301 ('301 Patent).  The '301 patent issued May 30, 2006.

Plaintiff alleges that it produces over 40% of the lamp sockets used in General Motors' vehicles.  Approximately 75% of Plaintiff's business derives from this patented lamp socket.

Defendant began producing an indistinguishable lamp socket.  It sold ten thousand of those lamp sockets to Automotive Lighting ("ALNA").

On June 9, 2006, Plaintiff filed a one count Complaint alleging infringement of the '301 patent.  On June 27, 2006, Plaintiff filed a Motion for preliminary injunction to enjoin Defendant from infringing.

The Court held an injunction hearing on Wednesday, July 19, 2006. Defendant clarified that the papers it filed in response to the injunction pertained to a different lamp socket and not the original one which prompted Plaintiff's lawsuit.  Defendant says it redesigned its socket after suit was filed.  The redesign modifies the angle between the lead receiving end and the lamp receiving end to between 111 and 120 degrees. Defendant claims the modification not only takes its lamp socket out of the scope of Plaintiff's patent, which calls for "substantially perpendicular" axes, but that it also

2

resolved a problem with intermittent leakage found in Plaintiff's design, since its design ensures encapsulation of the terminals with potting resin.  It is that socket, marked as Exhibit 3 at the hearing, which is referred to as the "accused device."

At the hearing, Defendant stated that it would stipulate to entry of an injunction with respect to its original lamp socket which prompted Plaintiff's lawsuit, marked as Exhibit 2 at the hearing.  Defendant conceded Exhibit 2 was nearly identical to Plaintiff's product.  In fact, Defendant asserted that the only defense it had with regard to its original socket was invalidity.

Also at the hearing, Defendant maintained that its redesign does not infringe, and regardless, Plaintiff's patent is invalid.  Plaintiff asserted both literal infringement and infringement under the doctrine of equivalents.  It denies that its patent is invalid.

This Opinion and Order addresses the redesigned socket (Exhibit 3) *vis a vis* the '301 patent.

**III.   STANDARD OF REVIEW**

In considering injunctive relief, the district court must take into account: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distributing Company v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  No single factor is dispositive.  The court must balance the factors to determine whether they weigh in favor of an injunction.  *Id.*

**IV.    APPLICABLE LAW AND ANALYSIS**

   **A.    Likelihood of Success on the Merits**

   When a patentee seeks a preliminary injunction, the patentee must show that in light of the presumptions and burdens that will inhere at trial on the merits: (1) the defendant likely infringes the patent; and (2) its infringement claim will likely withstand a challenge to validity and enforceability. *Amazon.com, Inc. v. BarnesandNoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). "If [the defendant] raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Id.* at 1350-1351.

   **1.    Infringement**

   There are two steps involved in determining patent infringement: (1) the court must determine the scope of the claim; and (2) the properly construed claim must be compared to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent. *Amazon.com,* 239 F.3d at 1351. Step one - claim construction - is a question of law for the Court; step two - comparing claims to the accused device - is a question of fact. *Dynacore Holdings Corporation v. U.S. Philips Corporation*, 363 F.3d 1263, 1273 (Fed. Cir. 2004).

   To ascertain the meaning of claims, courts rely on the claims, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). That type of evidence is considered intrinsic. *Id.* Additionally, the court may receive extrinsic evidence "to aid the court in coming to a correct conclusion

4

as to the true meaning of the language employed in the patent." *Id.* at 980. Extrinsic

evidence includes expert testimony given to aid the court in ascertaining the meaning of

a technical or scientific term or term of art; dictionaries; and, learned treatises. *Id.*

Plaintiff alleges that Defendant's redesigned lamp socket literally infringes claim 3

of its patent. Claim 3 reads as follow:

> 3.    A lamp socket comprising,
>
> a socket body having a lamp receiving portion, a back portion and a partition there between;
>
> at least one terminal in said socket body, said terminal having a lamp receiving end and lead receiving end, said lead receiving end having an axis that is substantially perpendicular to an axis of said lamp receiving end, said lead receiving end located in the back portion of said body, said lead receiving end being spaced apart from said partition;
>
> at least one wire lead connected to the lead receiving end of said terminal;
>
> potting material in the back portion of said socket body and encapsulating the connection of said wire lead to said terminal, said potting material filling the space between said lead receiving end of said terminal and said partition; and
>
> a spring clip having two prongs, said prongs being laterally offset from one another.

Motion, Exhibit A.

Plaintiff provides a description of how Defendant's original lamp socket infringed

each limitation in claim 3. [Motion, pp. 16-18]. The accused device appears to be the

same in all respects, except for the angle between the terminal ends.

### a.    Scope of Plaintiff's claim 3

Defendant argues that the scope of Plaintiff's claim does not encompass its

socket because the angle of the terminal ends in its lamp socket is 120 degrees, and

"120 degrees is not very close to perpendicular or 90 degrees at all." [Response, p. 10]. Defendant relies on *Amhil Enterprises v. Wawa, Inc.*, 81 F.3d 1554 (Fed. Cir. 1996), where the court held the phrase "substantially vertical" to pertain to items that deviated only slightly, if at all, from the vertical.

In *Amhil*, the patentee used the phrase "substantially vertical" interchangeably with "vertical" in both the specification, and within the claim. The court also noted that the patentee also used the language interchangeably during patent prosecution. Further, the court noted that based on prior art, if the claim was not construed as nearly vertical, the patent would be invalid for obviousness. *Id.* at 1560. Accordingly, the court held that "substantially vertical" meant "deviate only slightly, if at all, from the vertical...any other construction of claim 1 would render it invalid." *Id.* at 1562.

In *Playtex Products, Inc. v. Proctor & Gamble Company*, 400 F.3d 901 (Fed. Cir. 2005), the court held that the phrase "substantially flattened surfaces" did not refer only to a flat surface, but could include curved surfaces, depending on the comparative reference point. The court noted that "[t]he term substantial is a meaningful modifier implying approximate rather than perfect." *Id.* at 907. The court reiterated the holdings in recent cases involving interpretation of terms of degree. See *Cordis Corporation v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1361 (Fed. Cir. 2003)(refusing to impose a precise numeric constraint on the term "substantially uniform thickness" instead construing it to mean "of largely or approximately uniform thickness"); and, *Anchor Wall Systems v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298 (Fed. Cir. 2003)(holding that the phrase "generally parallel" envisions some amount of deviation from exactly parallel and that such words of approximation, such as "generally," and "substantially," are descriptive

6

terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter).

Here, Plaintiff gives two preferred embodiments in the specification.  In the first embodiment, it states that "the blade axis is preferably at about a right angle from the cradle axis...[t]he terminal is thus a one-piece right angle terminal...[a]lternatively, the cradle axis can be at an obtuse angle[1] relative to the blade axis..." [Motion, Exhibit A]. In the second embodiment, Plaintiff discloses that "[s]imilar to the first embodiment, the terminals have a cradle axis and a blade axis that are substantially perpendicular..." *Id*. Plaintiff uses the phrase "at about a right angle" interchangeably with "substantially perpendicular."  It does not use the word perpendicular interchangeably with any other phrase.  Accordingly, the *Amhil, supra*, holding is not read by this Court as limiting the phrase "substantially perpendicular" to mean perpendicular.

The explicit language of claim 3, "lead receiving end having an axis that is substantially perpendicular to an axis of said lamp receiving end," clearly envisions something more than strictly perpendicular; otherwise, the word "substantially" would have no meaning.

"Generally, there is a 'heavy presumption' in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art."  *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001)(citation omitted).  However, the presumption in favor of the ordinary meaning can be overcome where the patentee chose to be his own lexicographer, by using terms in a

---

[1]An obtuse angle is an angle greater than 90 degrees, but less than 180 degrees.

manner other than their ordinary meaning. *Id.* "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.*

Based on the language in the specification, the Court finds that Plaintiff intended to limit the phrase "substantially perpendicular" to "about a right angle," or 90 degrees. This is further evidenced by Plaintiff's characterization of its socket as a "right angle terminal."

The Court finds as a matter of law, based on the intrinsic evidence, that the phrase "substantially perpendicular" as used in claim 3, means an angle that is 90 degrees or approximately 90 degrees.

### b.    Application of properly construed claim to Defendant's device

The next step in the infringement analysis is to determine whether the accused device falls within the scope of protection afforded by claim 3 of Plaintiff's patent, either literally or under the doctrine of equivalents. *Markman*, 52 F.3d at 976.

### i.    Literal infringement

A claim for literal infringement is proved when every limitation in a claim is present in the accused device exactly. *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991). If one limitation is missing or not met, there is no literal infringement. *Markman*, 52 F.3d at 976.

One limitation is the angle between the terminal ends. The patent calls for it to be "substantially perpendicular." Defendant claims there is no literal infringement because its device has a 120 degree angle. Plaintiff claims the accused device has a

8

111 degree angle, based on a drawing of the accused device, which Plaintiff measured. Defendant opined that perhaps the drawing was distorted while in transit to Plaintiff. Defendant proffered that the head engineer at Empire would testify that the angle is 120 degrees. Plaintiff conceded that one of the drawings provided by Defendant showed an angle of 120 degrees.

The Court has already construed the claim language to mean an angle that is 90 degrees or approximately 90 degrees. Based on that construction - and since the ultimate issue is whether the angle in the accused device is "substantially perpendicular" - the Court finds that Defendant's lamp socket - whether the angle is 111 degrees or 120 degrees - does not literally infringe Plaintiff's patent.

The parties should bear in mind that the Court has no obligation to interpret claims conclusively and finally during a preliminary injunction proceeding. *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996). Plaintiff is free to assert a claim of literal infringement at trial, after discovery and consultation with experts.

### ii.    Doctrine of equivalents

While infringement clearly arises if the accused device includes each and every limitation of a patent claim, a patent owner may still prove infringement even if a limitation is missing, so long as it has something equivalent to the missing limitation. *Warner-Jenkinson Company v. Hilton Davis Chemical Company*, 520 U.S. 17, 29-30 (1997).

"Absent a finding of literal infringement, the trial court can find that an accused device infringes by applying the doctrine of equivalents." *Sofamor*, 74 F.3d at 1221.

9

The doctrine of equivalents allows the patentee to include those insubstantial changes or substitutions that were not literally captured by the patent claim, but which could be created through trivial changes. *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Company*, 122 S.Ct. 1831 (2002).

Two tests are used to determine whether an accused device infringes under the doctrine of equivalents. The "function-way-result" test requires a patentee to show that the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed device. *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1325 (Fed. Cir. 1992)(citing *Graver Tank & Manufacturing Company v. Linde Air Products Company*, 339 U.S. 605 (1950)). The "substantially the same way" prong of this test is met if an equivalent of a recited limitation is substituted in the accused device. *Id.*

The second test is to determine if there are "insubstantial differences." Applying this test, "[t]he accused product is equivalent to a claimed element if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Marquip, Inc. v. Fosber America, Inc.*, 198 F.3d 1363, 1366 (Fed. Cir. 2000).

"Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice to show infringement under the doctrine of equivalents." *Comark Communications, Inc. v. Harris Corporation*, 156 F.3d 1182, 1188 (Fed. Cir. 1998)(citation omitted). To determine an equivalent, the court examines:

> the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum...An important factor

10

is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

*Sofamor*, 74 F.3d at 1221 (citing *Graver Tank*, 339 U.S. at 609).

Under the doctrine of equivalents, each disputed limitation of the claimed device must be examined for equivalency.  *Warner-Jenkins*, 520 U.S. at 30.  The only disputed limitation here is the angle of the terminal ends.

Before the Court applies either test, it must discuss restrictions on the doctrine of equivalents raised by Defendant.

### (a)    Limitations on Infringement Under the Doctrine of Equivalents

One limitation on infringement under the doctrine of equivalents is prosecution history estoppel, or file wrapper estoppel, which Defendant argues.  This estoppel ensures that any subject matter surrendered during prosecution (*e.g.*, to narrow claims to avoid the prior art) cannot be recaptured under the doctrine of equivalents in a suit for patent infringement.  *Festo*, 122 S.Ct. at 1839.  At the same time, it preserves the purpose of the doctrine of equivalents: to protect insubstantial differences that were not captured in drafting the original patent claim.  *Id.*  Where the original application embraced the purported equivalence, but the claims terms were narrowed to obtain the patent, the patentee cannot later claim a more broad scope of protection.  In that instance, the court is free to decide that the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, chose the narrower, and relinquished the broader claim.  *Id.*  Thus, in evaluating prosecution history estoppel as a restriction, the Court must consider whether any arguments/amendments narrowed the claim.

11

During the '301 patent's prosecution history, there were no arguments/amendments to claim 3 that narrowed the "substantially perpendicular" provision.  Neither in its brief nor at the hearing did Defendant identify any statement made by Plaintiff during prosecution that would serve to narrow the scope of this limitation in the '301 patent.  The "substantially perpendicular" limitation was added just prior to allowance of the patent and was not addressed by the patent examiner. Accordingly, prosecution history estoppel does not support a finding that this limitation was narrowed or surrendered in order to obtain a patent.

Another restriction on the range of equivalents argued by this Defendant is prior art.  A patent owner cannot use the doctrine of equivalents to cover subject matter that could not have been patented because of prior art.

One non-obligatory way that a court can use to determine if prior art restricts the range of equivalents, is to craft a hypothetical claim that is sufficient to cover the accused device literally.  If this hypothetical claim is patentable, prior art is not a bar, and the doctrine of equivalents can be applied to find infringement.  If the hypothetical claim would not be patentable, then it would be improper for a court to find infringement under the doctrine of equivalents.  See *Wilson Sporting Goods v. David Geoffrey and Associates*, 904 F.2d 677, 684 (Fed. Cir. 1990) and *Marquip*, 198 F.3d at 1367.

The focus in this inquiry is not on whether individual limitations are found in the prior art, but rather on the claim as a whole, because individual claim limitations are often found in the prior art.  *Intel Corporation v. U.S. International Trade Commission*, 946 F.2d 821, 842 (Fed. Cir. 1991).

The hypothetical claim here would be for a lamp socket identical to Plaintiffs in all

12

respects, except with a 120 degree angle between the terminal ends, as the accused device has.  The Court must decide if such a socket would be patentable over the prior art.

Throughout prosecution of the '301 patent, the patent examiner made clear that the spring clip with laterally offset prongs was the patentable subject matter in Plaintiff's claim 3.  The addition by Plaintiff of the "substantially perpendicular" language did not change the patent examiner's determination that the patent was allowable based on the spring clip disclosure.

Thus, because the hypothetical claim representing Defendant's infringing device is identical to Plaintiff's claim 3, with the exception of the "substantially perpendicular" limitation, and the limitation that made Plaintiff's claim allowable (the spring clip) is unchanged, the hypothetical claim would be patentable over prior art.  Stated another way, even if Defendant presented prior art which disclosed an angle between the terminal ends of 120 degrees, the claim as a whole would still be allowable because the patentable limitation is unaffected.  Accordingly, prior art does not limit the range of equivalents, and this Court can rely on the doctrine of equivalents to find infringement.

### (b)    Function-Way-Result Test

Turning to the function-way-result analysis, clearly the function and way of the accused device and the '301 patent are the same.  Defendant's lamp socket performs substantially the same function in substantially the same way as Plaintiff's socket. However, Defendant asserts that there is a substantially different result because its socket does not have a leakage problem, as it contends Plaintiff's does, because of the degree of the angle.

13

At the hearing, Defendant asserted that ALNA was dissatisfied with Plaintiff's sockets because of leakage.  Defendant says the problem occurred when moisture came in contact with the terminals because the potting compound did not always fully encapsulate them.  Defendant claimed that ALNA came to it to manufacture lamp sockets after it identified quality control problems in Plaintiff's sockets.

Defendant manufactured 10,000 lamp sockets identical to Plaintiff's, allegedly because it had not yet discovered the cause of the leakage problem.  Eventually, somehow, Defendant realized that the intermittent leakage problem occurred because the 90 degree angle sometimes prevented the potting compound from fully encapsulating the terminals.  In order to eliminate the problem, Defendant says it widened the angle to ensure full encapsulation by the potting compound.

Plaintiff argues Defendant manufactured the accused device not to correct a leakage problem, but to get around the literal language of Plaintiff's patent.  While Plaintiff concedes quality control issues were brought up by ALNA, Plaintiff says they pertained to manufacturing errors, not design defect.  Additionally, Plaintiff proffered at the hearing that its contact person who deals regularly with ALNA was never informed of any leakage problem.  A letter from ALNA attached to an unsigned declaration, provided in Defendant's Response, shows that ALNA terminated its contract with Plaintiff due to defects in Plaintiff's product, but the letter does not define what the defects were.

Plaintiff pointed out during the hearing that its design does allow for complete encapsulation of the terminal ends by the potting compound.  In the specification of Plaintiff's patent, it states that "[w]hen the resin is introduced, the resin flows underneath

14

the terminal into the clearance space between the terminal and the recess portion.  The resin locks the lead in place in the terminal by encapsulating the connection." [Motion, Exhibit A].

"Infringement is determined by comparing the accused devices not with products made by the patentee but with the claims of the patent as properly construed."  *Allen Engineering Corporation v. Bartell Industries, Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002).  It is not appropriate to compare Plaintiff's actual lamp socket - let alone to isolate those with manufacturing defects - to the accused device.  The proper comparison is between the accused device and Plaintiff's properly construed claim 3.

Claim 3 states that "potting material in the back portion of said socket body and encapsulating the connection of said wire lead to said terminal, said potting material filling the space between said lead receiving end of said terminal and said partition." Therefore, claim 3 requires that the potting material encapsulate the terminal.  Using this proper comparison, the accused device has the same result as Plaintiff's claim 3.

The Court finds the function-way-result test is met by Plaintiff.

(c)    **Insubstantial Differences Test**

Is this accused device substantially different from Plaintiff's claim 3?  "A claim element is equivalently present in an accused device if only insubstantial differences distinguish the missing claim element from the corresponding aspects of the accused device."  *Allen Engineering Corporation v. Bartell Industries, Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002).

The only difference between Plaintiff's device and the accused device is the degree of the angle between the lead and lamp receiving ends.  As discussed *supra*,

15

the Court determined that this element of the accused device is equivalent under the function-way-result test.

### 2.    Validity

Defendant argues that Plaintiff's patent is invalid based on prior art not considered by the patent examiner.

Defendant bears the ultimate burden at trial to prove by clear and convincing evidence that the patent is invalid.  *Purdue Pharma v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001).  However, to support a motion for preliminary injunction, Plaintiff bears the burden of establishing a likelihood of success on validity, and thus, must show that Defendant likely will not prove that the patent is invalid.  *Id.* "Every patent is presumed valid, so if [Defendant] fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies [Plaintiff's] burden on validity."  *Id.*

Defendant asserts Plaintiff's patent is invalid because the "spring clip having two prongs, said prongs being laterally offset from one another" contained in claim 3, is disclosed by prior art.

There are two ways in which prior art can invalidate a patent:  anticipation and obviousness.  "Invalidity for anticipation requires that all of the elements and limitations of the claim are found within a single prior art reference."  *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991)(citation omitted). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."  *Id.*

Defendant does not allege anticipation; it made no attempt to identify a single

16

prior art reference that contained *all* of the limitations of Plaintiff's claim 3.

Invalidity based on obviousness requires the person alleging invalidity to show "prior art references which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of the invention." *Al-Site Corporation v. VSI International, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999). "The party seeking patent invalidity based on obviousness must also show some motivation or suggestion to combine the prior art teachings. A suggestion or motivation to combine generally arises in the references themselves, but may also be inferred from the nature of the problem or occasionally from the knowledge of those of ordinary skill in the art." *Id.* at 1323-1324.

Defendant argues the Brodner patent, No. 5,046,970, "disclosed a lamp socket with offset spring clips." [Response, p.5]. The Brodner patent was part of the record considered by the patent examiner prior to allowing Plaintiff's patent. Where the examiner previously considered the prior art reference, the defendant bears an even heavier burden to prove invalidity. *Metabolite Laboratories, Inc. v. Laboratory Corporation of America Holdings*, 370 F.3d 1354, 1368 (Fed. Cir. 2004). Defendant assumes the examiner "overwhelmed with over fifty prior art references, did not recognize that the Brodner patent contained offset spring clips." [Response, p.6].

Plaintiff claims the Brodner patent lacks a spring clip. It contends the Brodner patent discloses two individual plastic arms, not one single clip, as disclosed in Plaintiff's patent. [Reply, p.4 n.3].

The specification of the Brodner patent states that it contains a "pair of similarly offset plastic spring arms...[t]he spring arms and the support plate together form an

17

insert." [Response, Exhibit B]. Further, the Brodner patent claims "an insert having a pair of spring arms attached to a support plate...a pair of spring arms insertable into said pair of openings...said spring arms being integrally formed with a support plate..." [Response, Exhibit B]. The Court agrees with Plaintiff.

Defendant also cites the Moore patent No. 4,630,877 as prior art that invalidates Plaintiff's "laterally offset spring clips." [Response, p.10]. The Moore patent was not in the record considered by the patent examiner.

Plaintiff argues that the Moore patent does not disclose a clip. It contends that the figures identified by Defendant as "spring clips" are actually terminals.

The Court has not been presented with sufficient information to properly evaluate the Moore patent. Hence, it will not consider it in determining the validity of the '301 patent. None of the other patents produced by Defendant at the hearing were persuasive on the issue of invalidity.

The Court finds that Defendant did not establish that Plaintiff's lamp socket was obvious at the time of invention; it only asserted that two of the limitations present in claim 3 were disclosed in prior art. Defendant did not address the other limitations in claim 3 and did not offer any argument concerning motivation to combine the references.

Accordingly, Defendant's defense of invalidity does not have substantial merit, particularly in light of the burden and presumptions Defendant faces at trial.

Because: (1) Plaintiff established a likelihood of success of proving infringement under the doctrine of equivalents; (2) Plaintiff's patent is presumed valid; and (3) Defendant failed to substantiate a defense of noninfringement or invalidity, the Court

18

finds that the likelihood of success on the merits factor weighs in favor of Plaintiff.

**B.     Irreparable Harm**

"Irreparable harm is presumed when a clear showing of patent validity and infringement has been made."  *Amazon.com*, 239 F.3d at 1350.

Defendant's only treatment of this factor is to state that Plaintiff will not suffer irreparable harm, and that it has sufficient assets to compensate Plaintiff with money damages if Plaintiff prevails.

This factor weighs in favor of a preliminary injunction.

**C.     Substantial Harm**

Both parties cite to the financial difficulty each faces depending on the outcome of this Motion.  Both companies allege they will lose substantial revenue and be forced to reduce staff.

This factor does not weigh in favor of either party.

**D.     Public Interest**

Plaintiff relies on the "strong public policy favoring the enforcement of patent rights."  *PPG Industries, Inc. v. Guardian Industries Corporation*, 75 F.3d 1558, 1567 (Fed. Cir. 1996).

Defendant asserts that the public interest weighs in its favor because the public should have the choice to purchase lamp sockets from the supplier of its choice.

The need for competition in the marketplace does not override the recognized public interest to enforce patent rights.  This factor weighs in favor of a preliminary injunction.

19

V.      **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for preliminary

injunction.  Plaintiff is to present a proposed Order consistent with this Opinion within

seven (7) days of entry of this Opinion.

**IT IS SO ORDERED.**

**s/Victoria A. Roberts**
**Victoria A. Roberts**
**United States District Judge**

**Dated:  July 25, 2006**

```
The undersigned certifies that a copy of
this document was served on the
attorneys of record by electronic means or
U.S. Mail on July 25, 2006.

s/Linda Vertriest
Deputy Clerk
```